[No. A078807. First Dist., Div. Five. Aug. 12, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY LEE GRAY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Nina Rivkind, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Linda M. Murphy and Lisa H. Ashley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JONES, J.**—Gregory Lee Gray appeals his convictions for attempted carjacking (Pen. Code, §§ 215, 664)[1] and attempted kidnapping (§§ 207, subd. (a), 664). The issues on appeal include questions concerning the constitutionality of section 215, the sufficiency of the evidence supporting appellant's conviction for attempted carjacking, the trial court's rulings on various motions, and appellant's sentence. We conclude that appellant's contentions all lack merit, and therefore affirm the trial court's judgment.

### PROCEDURAL BACKGROUND

On January 14, 1997, the Contra Costa County District Attorney filed an information charging appellant in count 1 with attempted carjacking and in count 2 with attempted kidnapping. The information also charged appellant with the following enhancements based on appellant's convictions for robbery in 1993: a habitual criminal enhancement (§ 667, subd. (a)), a prior prison term enhancement (§ 667.5, subd. (b)), a three strikes enhancement (§ 1170.12, subds. (b) & (c)), and a probation ineligibility clause (§ 1203, subd. (e)(4)).

A jury trial on the two criminal counts was held on April 22-24, 1997. The jury found appellant guilty on both counts.

At the beginning of the trial, the trial court had granted appellant's motion to bifurcate trial on the enhancement allegations. A court trial was held on those allegations following the jury's verdict. The court found all the allegations to be true.

At the sentencing hearing held on May 23, 1997, the trial court denied appellant's motion to strike his prior convictions pursuant to *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. The court sentenced appellant to 25 years to life in state prison for the attempted carjacking offense, and stayed sentencing on the attempted kidnapping offense pursuant to section 654. The court imposed a consecutive five-year enhancement pursuant to section 667, subdivision (a) and a one-year enhancement pursuant to section 667.5, subdivision (b), but struck the latter. Appellant's total term is 30 years to life in state prison.

---

[1] All further statutory references are to the Penal Code except where otherwise indicated.

## FACTUAL BACKGROUND

About 3:30 a.m. on October 18, 1996, Alexandra Edwards, a BART (Bay Area Rapid Transit) station agent, arrived at the Lafayette, California BART station. Her job was to open the station at 4 a.m. She parked her car near the station entrance and turned the engine off. She opened the door on her side of the car, but before getting out she turned back to retrieve her backpack. When she started to get out of the car, she saw a man she identified at trial as appellant approaching the car from the rear.

Edwards heard appellant mutter something and assumed he was asking for money, so she ignored him. Appellant then told Edwards to give him her car keys and move to the other side of the car. Alarmed, Edwards did not give appellant her keys, but told him to step aside and let her out of the car. Appellant stepped closer to the car and repeated his demand more loudly.

Edwards, now afraid for her life, told appellant to let her out and that he could take the keys. Unsatisfied with this offer, appellant became even more aggressive. Leaning closer to the car, he told Edwards, "You don't understand." He stuck his hand under his shirt, told Edwards he had a gun, and threatened to kill her if she refused to cooperate. He said he did not care about the police because there was already an outstanding warrant for his arrest.

Edwards believed appellant would catch her if she tried to escape out the passenger side of the car. She then saw her sun visor[2] lying open on the passenger seat. She picked up the visor and thrust it at appellant's face through the still open driver's side door. She also attempted to kick him but missed. As appellant retreated from this assault, Edwards began closing the door. Appellant grabbed the door but after a brief struggle had to let go to save his fingers from being smashed as the door closed. Edwards locked the door and started the car. As she reversed out of her parking space, she saw appellant standing in the way. He moved, however, to avoid being hit. Edwards drove to a service station about 10 minutes away, where the attendants called the police. She testified that as she left the BART station she took a good look at appellant because she knew she would have to identify him later.

---

[2]A metal-rimmed piece of cloth placed in the windshield of cars to protect the interior from the sun.

Contra Costa County Deputy Sheriff Edward Gibbons responded to the call. Gibbons recognized appellant from Edwards's description of him.[3] Gibbons, another deputy sheriff, and Edwards returned to the BART station about 4 a.m. to search for appellant, but did not find him. Edwards later identified appellant from a photo lineup.

Appellant, testifying in his own defense at trial, said that Edwards had simply misunderstood his request for help. He denied putting his hand in his shirt and pretending to have a gun. He testified that after Edwards drove off he waited at the station entrance for 10 to 15 minutes until a man gave him money for a ticket, and then he left on a train.

On cross-examination, appellant admitted that he had two prior robbery convictions, and that on both occasions he had pretended to have a gun.

## DISCUSSION

I. *Section 215, Subdivision (a) Is Not Unconstitutionally Vague*

 Appellant contends his conviction for attempted carjacking must be reversed because section 215, subdivision (a) is unconstitutionally vague. We disagree.

 "The fundamental policy behind the constitutional prohibition of vaguely worded criminal statutes was stated in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, at page 453 . . . : 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' " (*People* v. *Superior Court* (*Engert*) (1982) 31 Cal.3d 797, 801 [183 Cal.Rptr. 800, 647 P.2d 76].) "[D]ue process of law in this context requires two elements: a criminal statute ' "must be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." ' [Citations.]" (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 567 [20 Cal.Rptr.2d 341, 853 P.2d 507].) " ' ". . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must

---

[3]About 3 a.m. that morning, Gibbons had responded to a call at a Lucky grocery store in Lafayette where he encountered a man he identified at trial as appellant. Appellant told Gibbons he and some friends had stopped at the store because of car problems, that he had gone inside, and that when he came out his friends were gone. A warrant check revealed that appellant had an outstanding warrant for petty theft. Gibbons informed appellant of the warrant but did not arrest him. Gibbons directed appellant toward the Lafayette BART station, which is about a quarter of a mile away from the Lucky store, and saw appellant walk off toward the station.

necessarily guess at its meaning and differ as to its application, violates the first essential element of due process of law." . . .'" (*People* v. *Antoine* (1996) 48 Cal.App.4th 489, 496 [56 Cal.Rptr.2d 530], citations omitted.)

"The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language."' . . ." (*Williams* v. *Garcetti, supra,* 5 Cal.4th at p. 568, citation omitted.)

 In pertinent part, section 215, subdivision (a) defines "carjacking" as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

Appellant attacks as vague the terms "felonious taking" and "temporarily deprive." Asserting that courts and commentators have defined "felonious taking" as requiring the intent *permanently* to deprive an owner of his or her property, appellant contends section 215, subdivision (a) is inherently vague and ambiguous because it permits a conviction for carjacking not only when a defendant has such an intent, but also when a defendant only has the intent *temporarily* to deprive the person in possession of a vehicle.

We consider appellant's argument in light of both the language and the legislative history of section 215, subdivision (a). (See *People* v. *Antoine, supra,* 48 Cal.App.4th at p. 497). The language of section 215, subdivision (a) does not evince any "inherent" vagueness or ambiguity. Appellant may be correct regarding prior interpretations of the term "felonious taking." Nevertheless, in section 215, subdivision (a), the Legislature expressly described the intent required for the crime of carjacking, i.e., "the intent to either *permanently or temporarily* deprive the person in possession of the motor vehicle of his or her possession." (§ 215, subd. (a), italics added.) The statutory language clearly permits a conviction for carjacking based on evidence of the latter intent.[4]

The legislative history of section 215 supports our conclusion. In *People* v. *Medina* (1995) 39 Cal.App.4th 643 [46 Cal.Rptr.2d 112], the court,

---

[4]Other courts that have applied section 215 have read that section as allowing a conviction based on such intent. (See *People* v. *Green* (1996) 50 Cal.App.4th 1076, 1083-1084 [58 Cal.Rptr.2d 259]; *People* v. *Hamilton* (1995) 40 Cal.App.4th 1137, 1141 [47 Cal.Rptr.2d

though considering an issue different from ours, set forth portions of the legislative history that we find pertinent: " 'According to the author [of the legislative bill], there has been considerable increase in the number of persons who have been abducted, many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. [¶] 'This relatively "new" crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, it would be simpler to hot-wire the automobile without running the risk of confronting the driver. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally, law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing. [¶] 'Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery *because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car)* since [many] of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime.' (Assem. Com. on Pub. Safety analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.)" (*People* v. *Medina, supra,* 39 Cal.App.4th at pp. 647-648, italics added; see also *People* v. *Antoine, supra,* 48 Cal.App.4th at pp. 494-495.)

We conclude that the terms of section 215, subdivision (a) are sufficiently certain, and that it is reasonable and practical to construe that section as permitting a conviction based on an intent either to permanently or temporarily deprive the owner of possession of his or her car. (*Williams* v. *Garcetti, supra,* 5 Cal.4th at p. 568.) We thus conclude that the inclusion of the terms "felonious taking" and "temporarily deprive" in section 215, subdivision (a) does not render that provision unconstitutionally vague.

II. *The Evidence Is Sufficient to Support Appellant's Conviction for Violation of Section 215*

■ Appellant contends his conviction for attempted carjacking must be reversed because the evidence is insufficient to support the jury's verdict. We disagree.

■ When a conviction is challenged for lack of evidentiary support, we "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could

343]; *People* v. *Dominguez* (1995) 38 Cal.App.4th 410, 418 [45 Cal.Rptr.2d 153].) None of those courts addressed the issue before us, but their opinions nonetheless provide persuasive support for the conclusion that section 215, subdivision (a) is not vague in the manner suggested by appellant.

reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.]" (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Rippberger* (1991) 231 Cal.App.3d 1667, 1680 [283 Cal.Rptr. 111].)

 Appellant contends that under section 215, subdivision (a) a defendant must intend to take a vehicle *from* the physical presence of the person in possession of the vehicle. On this premise, appellant contends there is no evidence that he tried to take Edwards's car away from her presence, and, consequently, there is insufficient evidence that he intended to deprive her of possession of her car.

The flaw in appellant's contention is that his interpretation of section 215, subdivision (a) finds no support in the law. As we understand appellant's argument, the "intent to deprive" element of the carjacking offense is satisfied only if a defendant intends physically to force the victim from the target vehicle.[5] The language of section 215, subdivision (a) does not expressly set forth such a requirement. Thus, appellant's interpretation is valid only if we should imply such a requirement from the clause "with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession." To answer that question, we must determine what it means to deprive someone of *possession* of a vehicle.

The parties have not cited any cases involving carjacking that specifically discuss this issue, and we have not found any through independent research. We may, however, turn for guidance to cases involving the crime of robbery. (See *People* v. *Hamilton*, *supra*, 40 Cal.App.4th at p. 1142.) We find persuasive the case of *People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905], which was cited to us by respondent. There, the defendant contended the evidence was insufficient to support his conviction for robbery because the evidence failed to establish that he took and carried away personal property in the possession of the victim. The California Supreme Court rejected this contention, stating: "The evidence clearly supports the necessary finding that defendant when he forced Ashcraft at

[5]The elements of the offense of carjacking are: "1. A person had possession of a motor vehicle; [¶] 2. The motor vehicle was taken from his or her person or immediate presence, or from the person or immediate presence of a passenger of such vehicle; [¶] 3. The motor vehicle was taken against the will of the person in possession; [¶] 4. The taking was accomplished by means of force or fear; and [¶] 5. The person taking the vehicle had the intent to either permanently or temporarily deprive the person in possession of the vehicle of that possession." (CALJIC No. 9.46 (6th ed. 1996).)

gunpoint to the floor of the cab and drove off evidenced an intent to and did in fact deprive the victim of possession of the truck and the personal property therein. Not only did defendant have *dominion and control* over the truck and its contents but also over the victim, and the robbery did not remain incomplete merely because defendant abducted both the truck and the victim." (*Id.* at p. 635, italics added.)

Seizing on the last portion of the above quoted language, appellant seeks to distinguish *Beamon* on the ground the issue was whether the robbery remained incomplete and not whether the defendant intended to deprive the victim of his property. Even assuming arguendo that the ultimate question in that case was whether the robbery remained incomplete, however, the court's opinion makes clear that the answer to that question turned on whether there was sufficient evidence that the defendant had deprived the victim of possession of his property. (See *People* v. *Beamon, supra,* 8 Cal.3d at p. 635.)

The lesson we draw from *Beamon* is that the crime of robbery may be established not only when the defendant has taken property out of the physical presence of the victim, but also when the defendant exercises dominion and control over the victim's property through force or fear. This notion has been recognized by our own court. (See *People* v. *Pham* (1993) 15 Cal.App.4th 61, 64-67 [18 Cal.Rptr.2d 636], and cases cited therein.)

Applying this principle in the carjacking context, we conclude that the owner or possessor of a vehicle may be deprived of possession not only when the perpetrator physically forces the victim out of the vehicle, but also when the victim remains in the car and the defendant exercises dominion and control over the car by force or fear. This interpretation is consistent with the law on robbery and the legislative history of section 215. (See *People* v. *Medina, supra,* 39 Cal.App.4th at pp. 647-648.)[6]

There is substantial evidence in this case that appellant threatened Edwards with physical violence by pretending to have a gun, and that he demanded that Edwards give him her car keys. This evidence is sufficient to establish that appellant intended to exercise dominion and control over Edwards's car through force or fear and, therefore, that he intended to deprive Edwards of possession of her car. Since appellant does not attack the sufficiency of the evidence on any other basis, we conclude that his conviction for attempted carjacking is supported by sufficient evidence.

---

[6]We note that carjacking convictions have been upheld in at least two cases in which the victim remained with the vehicle. (*People* v. *Green, supra,* 50 Cal.App.4th at pp. 1080-1081; *People* v. *Foster* (1995) 34 Cal.App.4th 766, 769-771 [40 Cal.Rptr.2d 633].) The courts in those cases did not address the issue before us, however.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . .

### V. *The Trial Court Did Not Err by Denying Appellant's Motion for a Mistrial*

██ Appellant contends the trial court erred by denying his motion for a mistrial. We disagree.

██ " ' "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. . . . Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." . . .' " (*People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1154 [36 Cal.Rptr.2d 235, 885 P.2d 1]; see also *People* v. *Eckstrom* (1986) 187 Cal.App.3d 323, 330 [231 Cal.Rptr. 664].) "It is not an abuse of discretion when a trial court denies a motion for mistrial after being satisfied that no injustice has resulted or will result from the occurrences of which complaint is made. . . ." (187 Cal.App.3d at p. 330, citations omitted.)

██ Near the end of the prosecution's case-in-chief, appellant's counsel moved to withdraw, claiming a breakdown in the attorney-client relationship. Counsel argued that her defense had been one of mistaken identity, that she had presented this defense to the jury in her opening statement, that appellant had originally consented to this tactic, and that appellant had changed his mind and wanted to testify that he was present at the crime scene but that Edwards had misunderstood his request for help. Counsel further argued that she had not questioned prospective jurors on prior felony convictions because she had not planned on appellant testifying, that she had not cross-examined Edwards with appellant's testimony in mind, and that if appellant testified as he planned she would lose all credibility with the jury.

The trial court explained to appellant the risks and potential consequences he faced if he testified as he planned, then allowed appellant and his counsel to discuss the matter further. They could not reach an agreement.

The court then denied counsel's motion to withdraw, explaining that appellant's right to testify took precedence over counsel's prerogative to determine defense strategy, and that counsel would simply have to deal with any problems that arose. The court specifically noted that appellant understood the risk he was taking and nonetheless wished to testify.

*See footnote, *ante*, page 973.

Counsel then moved for a mistrial for the same reasons supporting her motion to withdraw. The court denied that motion too, explaining that changes in strategy occurred occasionally and that attorneys were expected to respond appropriately. The court recognized the difficulty defense counsel would face given her opening statement to the jury but reminded her that he had instructed the jury that statements of counsel are not evidence.

Appellant contends the court should have granted his motion for mistrial because the change in defense strategy prejudiced his case. He argues that counsel's opening statement essentially admitted the substance of the charges against him except the issue of identity, that the change in strategy affected counsel's credibility, that the district attorney commented on the change in strategy in his closing argument, and that the jury even asked about the change in strategy.

Appellant cites in support of his contention *People* v. *Coleman* (1992) 9 Cal.App.4th 493 [11 Cal.Rptr.2d 800], in which Division Four of this court reversed a criminal conviction on the ground the trial court should have declared a mistrial after defense counsel misstated the evidence in counsel's opening statement. The court stated that ". . . defense counsel's misstatement of the evidence in her opening statement undermined appellant's credibility and created a conflict of interest. This event caused a breakdown in the relationship between appellant and his counsel and frustrated the realization of a fair trial." (*Id.* at pp. 496-497.)

We find *Coleman* to be inapposite. In this case, defense counsel's opening statement became problematic not because she misstated the evidence, but because appellant insisted on changing defense strategy and exercising his right to testify *after* counsel had already spoken. As the transcript of counsel's motion to withdraw demonstrates, the trial court and counsel discussed at length the risks and possible consequences appellant would face if he testified. Appellant testified in spite of these warnings. In other words, appellant created the difficulty by his own conduct. Were we to reach a contrary conclusion, a defendant could trigger a conflict with counsel and a mistrial by simply exercising the right to testify inconsistently with counsel's defense strategy. Having knowingly created the risk of prejudice, appellant should not be rewarded with a reversal of his conviction when his decision proves harmful.

That a defendant's right to testify is paramount was underscored by the California Supreme Court in *People* v. *Robles* (1970) 2 Cal.3d 205 [85 Cal.Rptr. 166, 466 P.2d 710]: "We are satisfied that the right to testify in one's own behalf is of such fundamental importance that a defendant who

timely demands to take the stand contrary to the advice given by his counsel has the right to give an exposition of his defense before a jury. [Citation.] The defendant's insistence upon testifying may in the final analysis be harmful to his case, but the right is of such importance that every defendant should have it in a criminal case. Although normally the decision whether a defendant should testify is within the competence of the trial attorney [citation], where, as here, a defendant insists that he wants to testify, he cannot be deprived of that opportunity. [¶] The fact that an indigent defendant and his appointed counsel disagree as to whether the former should testify does not necessarily mean that the attorney should be discharged although it is a factor to be considered in connection with a motion for substitution. Requiring an attorney against his better judgment to examine his client places no unfair burden on the attorney; an attorney is always faced with the burden of developing his trial strategy in the light of what evidence is available and presented in court. Nor is a defendant ordinarily prejudiced when he is represented by an attorney who believes, contrary to the defendant, that the latter should not testify." (*Id.* at p. 215, fn. omitted.)

We conclude that the trial court did not abuse its discretion by denying appellant's motion for a mistrial.

## VI. *Defense Counsel's Performance at Trial Does Not Constitute Ineffective Assistance of Counsel*

■ Appellant contends his convictions must be reversed because he was denied effective assistance of counsel when his attorney revealed to the district attorney certain information regarding his prior convictions. We disagree.

■ Appellant bears the burden of proving his ineffective assistance of counsel claim. (*People* v. *Thomas* (1992) 2 Cal.4th 489, 530 [7 Cal.Rptr.2d 199, 828 P.2d 101].) "In order to demonstrate ineffective assistance, a defendant must first show counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687-688 [104 S.Ct. 2052, 2064-2065, 80 L.Ed.2d 674].) Second, he must show prejudice flowing from counsel's performance or lack thereof. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*In re Avena* (1996) 12 Cal.4th 694, 721 [49 Cal.Rptr.2d 413, 909 P.2d 1017].)" (*People* v. *Williams* (1997) 16 Cal.4th 153, 214-215 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

"Courts must in general exercise deferential scrutiny in reviewing such claims; the reasonableness of defense counsel's conduct must be assessed 'under the circumstances as they stood' at the time of counsel's acts or omissions; 'second-guessing' is to be avoided. (*In re Fields* (1990) 51 Cal.3d 1063, 1069-1070 [275 Cal.Rptr. 384, 800 P.2d 862]; *People* v. *Ledesma* (1987) 43 Cal.3d 171, 216-218 [233 Cal.Rptr. 404, 729 P.2d 839].)" (*People* v. *Mincey* (1992) 2 Cal.4th 408, 449 [6 Cal.Rptr.2d 822, 827 P.2d 388].) " ' "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " ' (*People* v. *Lewis* (1990) 50 Cal.3d 262, 288 [266 Cal.Rptr. 834, 786 P.2d 892], quoting *Strickland* v. *Washington, supra,* 466 U.S. at p. 689 [80 L.Ed.2d at pp. 694-695].)" (*People* v. *Thomas, supra,* 2 Cal.4th at pp. 530-531.)

 Here, the ineffective assistance of counsel issue arises on the following circumstances: The trial court had ruled prior to opening statements that if appellant testified at trial the district attorney could attempt impeachment with two of appellant's three prior robbery convictions but could only identify those priors as felonies of moral turpitude involving dishonesty. When appellant testified on cross-examination, he admitted these convictions. Appellant also put his character at issue, however, when he testified that it was not in his character to do the acts attributed to him by Edwards. At the district attorney's request, and over defense counsel's objection, the trial court expanded the scope of impeachment to include the fact that appellant's priors were robbery convictions. The trial court also ruled that defense counsel could explain to the jury that the robberies involved threats of violence but no weapons.

The district attorney then asked for a one-day continuance so that he could obtain the file on appellant's priors and examine the circumstances of those convictions. The trial court denied the district attorney's request, stating that the district attorney could inquire into the details of appellant's priors on cross-examination. The district attorney could review the file and make an offer of proof the next day, and, if appellant's testimony proved to differ substantially from the information in the police reports, then the court could reopen the prosecution's case.

Defense counsel then asked to make an ex parte offer of proof regarding appellant's priors. Counsel explained: "I want to fulfill my ethical obligations both to the Court and to my client which to a certain extent means I need to disclose something to the Court out of the presence of the prosecution because my ethical duty to my client is not to in any way do the DA's

job." The trial court suggested, and counsel acknowledged, that counsel had knowledge of additional relevant facts regarding appellant's prior convictions. The court at that point indicated that it might reconsider the district attorney's request for a continuance. Defense counsel asserted that the court should hear her information first, but the court was reluctant to do so outside the district attorney's presence. Defense counsel replied: "The problem here [is] it's not my obligation to do Mr. Grove's job. I happened to have researched the 1993 convictions for purposes completely unrelated to impeachment having to do with the strike nature of them, so I know about them. But I don't feel that it's my obligation to divulge everything to the District Attorney. I mean he has access to the same files I do."

The court thereafter requested that the file on appellant's priors be brought to court and declared a recess to allow the district attorney an opportunity to examine the file. Defense counsel then stated: "Judge, I don't want to waste time here. And I know that Mr. Grove needs to be somewhere tomorrow. . . . [¶] The problem that I see we're going to have when we get the file, based on . . . my reading of the police reports, is going to get into what used to be like the Beagle line of cases. Whether or not there's sufficient similarity between the offenses, and the reason I'm saying this; and I'm sure the appellate counsel will ring me on the record for doing this on appeal, they were Estes robberies. They were two separate incidents. One in September of '93. One in December of '93. But my recollection of the police reports is that in each instance after the shoplifting occurs, Mr. Gray, according to the witness, simulates a gun, tells the employees we'll shoot them if they try to prevent the shoplifting."

The district attorney and the trial court agreed that this information was very relevant. The court stated to defense counsel: "I appreciate . . . your dilemma Ms. Mockler, but it's something I think Mr. Grove would have found out, and it appears appropriate to evaluate that in view of the situation, especially in view of your client's statement that I do not do things like that." At that point, the file on appellant's priors arrived, and the district attorney was allowed to review it during the recess.

When court reconvened, defense counsel argued that the specific facts regarding appellant's priors should be excluded on the ground there had been no showing of a common plan or scheme which would render the evidence relevant. The trial court ruled, however, that appellant had opened the door by his own testimony, and that the facts of the prior convictions corroborated Edwards' version of the events leading to appellant's arrest.

Appellant contends that defense counsel's decision to reveal detailed information regarding his prior convictions to the district attorney rendered

her performance deficient. He contends there was no conceivable tactical advantage counsel could have gained by disclosing that information. According to appellant, counsel could have stayed within the limits of the trial court's expanded scope of impeachment merely by stipulating that appellant's prior convictions were robberies.

As respondent argues, however, and as defense counsel's own statements indicated, counsel believed she had an ethical obligation of candor to the court. At the time the district attorney requested the court to expand the scope of impeachment, defense counsel argued that the facts of appellant's priors were "very far removed" from the facts of this case. Both rule 3.3 of the American Bar Association Model Rules of Professional Conduct and rule 5-200 of the California State Bar Rules of Professional Conduct prohibit a lawyer from intentionally making a false statement of law or fact to a court. (ABA Model Rules Prof. Conduct, rule 3.3; Rules Prof. Conduct, rule 5-200.) Since counsel knew that appellant had pretended to have a gun in his prior offenses, as he did in this case, her representation of the facts of the priors arguably violated her duty not to make false statements to the court. Though it is difficult to conceive of any tactical advantage counsel gained by her disclosure, we nonetheless conclude that under the circumstances counsel's conduct was objectively reasonable under prevailing professional norms. (See *People* v. *Williams, supra,* 16 Cal.4th at p. 215.) We reject appellant's argument that defense counsel had satisfied her ethical duty to the court as the type of second-guessing courts should avoid when assessing a claim of ineffective assistance of counsel. (*People* v. *Mincey, supra,* 2 Cal.4th at p. 449.)

We also agree with respondent that appellant was not prejudiced by his counsel's actions. The record shows that after defense counsel indicated that she possessed additional information regarding appellant's priors, the trial court was prepared to allow the district attorney time to review appellant's file. The court even requested his clerk to have the file retrieved. The court then told the district attorney to continue his cross-examination of appellant and that a recess would be called when the file arrived. It is thus evident that the court fully intended to allow the district attorney to review appellant's prior convictions even before defense counsel's revelation.[10] Furthermore, we agree with the trial court that the district attorney would have discovered the circumstances of appellant's prior convictions from his own review of the file even if defense counsel had not disclosed that information. To the extent appellant suggests that the district attorney would not have reviewed his file because of the press of time, that suggestion is belied by the district

[10]Appellant's suggestion in a footnote that the timing of these events occurred in reverse order is contrary to the record.

attorney's request for a one-day continuance to review the file and is in any event not enough to show a reasonable probability that the outcome of this case would have been different had defense counsel not acted as she did. (*People* v. *Thomas, supra,* 2 Cal.4th at pp. 530-531.)

VII. *Sentencing Issues*

A. *Appellant's Sentence Does Not Constitute Cruel and Unusual Punishment*

 Appellant contends his sentence must be vacated on the ground it violates the federal and state constitutional prohibitions against cruel and unusual punishment. More specifically, appellant complains that his sentence is grossly disproportionate to the severity of his crimes. We disagree.

 Under the federal Constitution, the issue is whether the sentence is "grossly disproportionate" to the crime. (*Harmelin* v. *Michigan* (1991) 501 U.S. 957, 1001 [111 S.Ct. 2680, 2705, 115 L.Ed.2d 836] (opn. of Kennedy, J.) Under the state Constitution, the issue is whether the sentence "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], fn. omitted.)

"The *Lynch* court identified three techniques courts used to administer this rule. First, they examined the nature of the offense and the offender. [Citation.] Second, they compared the punishment with the penalty for more serious crimes in the same jurisdiction. [Citation.] Third, they compared the punishment to the penalty for the same offense in different jurisdictions. [Citation.]" (*People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1136 [46 Cal.Rptr.2d 351], citing *In re Lynch, supra,* 8 Cal.3d at pp. 425-427.) With respect to the first prong of this analysis, we note that our examination of the nature of appellant and his offense must take into account his recidivist behavior. (*People* v. *Cartwright, supra,* 39 Cal.App.4th at pp. 1136-1137.)

 Appellant argues that although his offense against Edwards was serious and unjustified, Edwards was unharmed. He also argues that the district attorney had at one point believed that eight years was sufficient punishment, that absent the effect of the three strikes law his maximum sentence would have been only 10.5 years, and that while his prior offenses involved aggression and verbal threats, he never used a weapon and never harmed anyone. He claims his criminal problems are related to alcohol and drug abuse, and that the record indicates he once suffered from schizophrenia.

We agree with respondent, however, that appellant's sentence is not disproportionate given his lengthy criminal history, particularly his recidivist behavior, and the nature of his current offense. The record shows that appellant committed his current offense while on parole. The probation report indicates that appellant has a long criminal history. He has been sentenced to prison four previous times, for larceny, assault with a dangerous weapon, retail fraud, and robbery. According to the report, appellant's crimes have been increasing in frequency and severity. He admits a drug problem, but has not taken any serious steps toward recovery. He has a propensity toward theft and intimidation, and is a potential danger to the community. In addition, appellant's current offense involved threats to Edwards that caused her to fear for her life.

With respect to the second prong of the *Lynch* analysis, we agree with the Fourth District in *People* v. *Ayon* (1996) 46 Cal.App.4th 385 [53 Cal.Rptr.2d 853] that a comparison of appellant's punishment for his current crimes with the punishment for other crimes in California is "inapposite since it is his recidivism in combination with his current crimes that places him under the three strikes law." (*Id.* at p. 400.) As the *Ayon* court stated: "Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [appellant's] punishment for his 'offense,' which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons. Other such offenders would likely receive similar or longer sentences under the new law if the law were applicable to them because of recidivist conduct." (*Ibid.*, fn. omitted.)

As for the final prong of the *Lynch* analysis, we find apt the following language, again from the Fourth District: "[A] comparison of California's punishment for recidivists with punishment for recidivists in other states shows that many of the statutory schemes provide for life imprisonment for repeat offenders, and several states provide for life imprisonment without possibility of parole. California's scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders. [Citation.]" (*People* v. *Cline* (1998) 60 Cal.App.4th 1327, 1338 [71 Cal.Rptr.2d 41].)

For all these reasons, we conclude that appellant's sentence is neither "grossly disproportionate" to his crimes nor so disproportionate as to shock the conscience and offend fundamental notions of human dignity. (*Harmelin* v. *Michigan, supra,* 501 U.S. at p. 1001 [111 S.Ct. at p. 2705]; *In re Lynch, supra,* 8 Cal.3d at p. 424.) We accordingly conclude that appellant's sentence does not violate the federal and state constitutional prohibitions against cruel and unusual punishment.

B. *Appellant Has Waived the Issue of Whether Use of His Prior Convictions Both as Strikes and to Enhance His Sentence Violates His Right to Due Process and the Constitutional Prohibition Against Double Jeopardy, as Well as the Issue of Whether Section 1170.12 Is Unconstitutionally Vague*

Appellant's opening brief contains a short section entitled "The Use Of The Prior Convictions To Support The Imposition Of A Five-Year Enhancement Under Section 667(A) As Well As The Imposition Of The Indeterminate Sentence Of 25 Years-To-Life Constituted A Violation Of Appellant's State And Federal Rights To Due Process And The Prohibition Against Double Jeopardy." The text of this section merely acknowledges, however, that the California Supreme Court in *People* v. *Dotson* (1997) 16 Cal.4th 547 [66 Cal.Rptr.2d 423, 941 P.2d 56] ruled that such dual use of a prior conviction is not improper, but did not address the issue of whether such dual use violated the federal and state constitutional prohibitions against double jeopardy.

Appellant also contends that section 1170.12 is unconstitutionally vague. We note that the three strikes law appears to have survived every vagueness challenge thus far brought against it (see, e.g., *People* v. *Fuhrman* (1997) 16 Cal.4th 930, 939-940 [67 Cal.Rptr.2d 1, 941 P.2d 1189]; *People* v. *Askey* (1996) 49 Cal.App.4th 381, 386-387 [56 Cal.Rptr.2d 782]), and that appellant does not challenge any particular terms or phrases in the statute, but merely asserts generally that the statute as a whole is vague.

Appellant's failure to provide any substantial argument or citation to authority to support these contentions constitutes a waiver of these issues. (*People* v. *Hardy* (1992) 2 Cal.4th 86, 150 [5 Cal.Rptr.2d 796, 825 P.2d 781].) We therefore decline to address them.

C. *Section 1170.12's Requirement That Prosecuting Attorneys Must Plead and Prove All Prior Convictions Does Not Violate the Separation of Powers Doctrine*

Appellant contends that section 1170.12 violates the constitutional separation of powers doctrine by requiring prosecuting attorneys to plead and prove all prior convictions. (§ 1170.12, subd. (d)(1).) According to appellant, this directive usurps the prosecuting attorney's discretion to charge, or not charge, a defendant with a crime. Appellant concludes that section 1170.12 thus constitutes an unconstitutional legislative infringement on the executive branch of government. We disagree.

Recently, the Second District in *People* v. *Kilborn* (1996) 41 Cal.App.4th 1325 [49 Cal.Rptr.2d 152] rejected an argument identical to appellant's. (*Id.*

at pp. 1333-1334.) We adopt the sound reasoning of that court, and conclude that the section 1170.12, subdivision (d)(1) does not violate the separation of powers doctrine enactment of the three strikes law.

D. *Section 1170.12 Does Not Violate the Constitutional Prohibition Against Ex Post Facto Laws*

Finally, appellant contends the use of his prior convictions in the manner set forth in section 1170.12 violates the state and federal constitutional prohibitions against ex post facto laws. Ex post facto challenges to the three strikes law have been rejected by numerous courts, including this one. (See, e.g., *People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1404 [48 Cal.Rptr.2d 256], disapproved on other grounds in *People* v. *Dotson*, *supra*, 16 Cal.4th 547; *People* v. *Reed* (1995) 33 Cal.App.4th 1608, 1610-1612 [40 Cal.Rptr.2d 47].) We reject appellant's challenge as well without further discussion.

## DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 18, 1998.