Filed 2/2/21  P. v. Zavala CA2/1
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B298290 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA022420) |
| v. | |
| OMAR ALEJANDRO ZAVALA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shannon Knight, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe J. Leszkay and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

This appeal follows the resentencing of defendant Omar Alejandro Zavala for attempted murder and assault with a firearm.  The original sentencing court issued an unauthorized sentence because it miscalculated defendant's minimum parole date.  The "Three Strikes law" (Pen. Code,[1] §§ 667, subds. (b)–(i), 1170.12) required the original sentencing court to double the 15-year minimum parole date because defendant suffered a prior serious or violent felony conviction.  (*People v. Jefferson* (1999) 21 Cal.4th 86, 90 (*Jefferson*).)  The resentencing court corrected the error and imposed a longer sentence for the attempted murder—totaling 60 years to life.  The resentencing court sentenced defendant to a 36-year determinate term for the assault with a firearm, but stayed that sentence pursuant to section 654.

On appeal, defendant argues that the resentencing court abused its discretion in declining to strike his prior conviction for a serious or violent felony, that his sentence violates principles of double jeopardy, and that his sentence constitutes cruel and unusual punishment.  Defendant forfeited these arguments because he failed to raise them in the trial court.  On their merits, his arguments also fail.

We affirm the judgment.

## BACKGROUND

### 1.    *Facts Underlying Defendant's Conviction*

In the appeal from the judgment of conviction, we described the pertinent facts:  "Defendant and Thomas Trevino were members of the LCV street gang in the Antelope Valley.  In early

---

[1] Undesignated statutory citations are to the Penal Code.

February 2001, they became acquainted with Sonia Ortiz. Sonia Ortiz has two sisters, Sandra Ortiz (Sonia's twin) and Clemmie Graves.

"On February 17, 2001, Sonia and Sandra Ortiz went to Graves's Lancaster residence. Their purpose was to baby-sit while Graves went out for dinner with her boyfriend, Salvador Santos, who was associated with the Paca Flats gang of Pacoima. While baby-sitting, Sandra called defendant and Trevino and asked them to come to Graves's house so the four could 'hang out' together after Graves returned. About 20 to 30 minutes later, two cars pulled up on the opposite side of the street from the house. The first car was an Acura in which Trevino was the driver and defendant was the passenger. Other LCV gang members were in the second car.

"Soon thereafter, Graves and Santos returned to the house, pulling part way into the driveway. Defendant asked Santos where he was from, which meant that he wanted to know Santos's gang affiliation (Santos had a shaved head and was wearing baggy clothes in the style of a gang member). Santos felt disrespected because someone was asking him about his gang affiliation in front of his (Santos's) own house. Santos responded by saying 'What?' in a tone that would let defendant know that he felt disrespected.

"Defendant, who was either standing next to the passenger door of the Acura or just getting out of the car through that door, then fired multiple gunshots at Santos. Santos fled upon hearing the shots, at first not realizing that he had been hit. Santos's brother approached and asked Santos if he was all right. At that point Santos heard more bullets and hid behind a nearby car. Eyewitness testimony coupled with physical evidence indicated

3

that defendant fired the first shots while getting out from the passenger side of the Acura and then moved toward the front of the car (perhaps for cover in the event that Santos had a gun), where he continued to fire." (*People v. Zavala* (July 24, 2003, B160722) [nonpub. opn.] (*Zavala I*), fn. omitted.)

"Defendant, Trevino and others were in a car that was involved in a traffic stop the day after the shooting. A .45-caliber handgun found in the car matched a bullet and casings that had been found at the scene. A gang expert testified that asking someone about gang affiliation could lead to a violent confrontation if the person asked were from a rival gang. It would be a sign of weakness to back down if the question were met with a disrespectful response. Shooting someone who had disrespected one's gang is a sign of strength and itself garners respect from members of the shooter's gang." (*Zavala I*, *supra*, B160722).

"Santos sustained a gunshot wound to the stomach, causing an injury to his hip bone that required surgery." (*Zavala I*, *supra*, B160722).

"[T]he manner in which defendant attempted to kill Santos demonstrated calculation; that is, firing multiple shots from relatively close range in separate groups of gunfire, the second group coming after Santos's brother approached him and asked if he was all right." (*Zavala I*, *supra*, B160722).

## 2.    *Conviction*

In February 2002, the jury found defendant guilty of attempted murder. The jury found that the offense was committed willfully, deliberately, and with premeditation. The jury found that defendant personally and intentionally discharged a firearm causing great bodily injury to Santos within

4

the meaning of section 12022.53, subdivision (d). The jury also found true a firearm enhancement within the meaning of section 12022.53, subdivision (c). The jury further found that defendant caused great bodily injury to Santos within the meaning of section 12022.7. The jury found a gang enhancement true.

The jury also convicted defendant of assault with a firearm and found that he personally used a firearm. With respect to the assault, the jury found that defendant personally caused great bodily injury to Santos.

Following a court trial on whether defendant had a prior robbery conviction, the court so found beyond a reasonable doubt. The court further found that the robbery constituted a serious or violent felony within the meaning of the Three Strikes law and that the robbery was a prior serious felony within the meaning of section 667, subdivision (a)(1), and a one-year prison prior within the meaning of section 667.5, subdivision (b).

### 3. *Probation Officer's Report*

The probation officer's report, dated October 25, 2001, indicated that defendant was born in 1980. Defendant had been a gang member since 1997. Defendant's mother reported defendant suffered from " 'learning disabilities,' " but defendant denied any medical problems.

Defendant had a criminal history. In November 1997, the juvenile court sentenced defendant to 6 months' probation for vandalism. Just over a year later, in January 1999, defendant was convicted of robbery. The probation officer described the facts underlying that robbery as follows: Defendant and two fellow gang members entered a store and one of defendant's confederates threatened the store clerk with a handgun and stole cash and other items. Another confederate stole cash from the

cash drawer.  Meanwhile, defendant took video tapes, cigarettes, and other items.  A getaway driver waited for defendant and his confederates and drove them away.  Officers later recovered "a large amount of money" and a .357 revolver loaded with one round.

Defendant violated his parole in February 2001, when he possessed a firearm.  A San Diego court sentenced defendant to 32 months for being a felon in possession of a firearm.  Defendant was on parole when he attempted to murder Santos.

### 4.    *Original Sentence*

On April 26, 2002, the original sentencing court imposed a life sentence for the attempted murder conviction with a premeditation finding.  The court correctly indicated that the gang enhancement required that the court impose a 15-year minimum parole eligibility.  (§ 186.22, subd. (b)(5).)  The court did not double the minimum parole date under the Three Strikes law.  The original sentencing court did not strike the prior serious or violent felony offense.  The court imposed a consecutive 25-year-to-life sentence pursuant to section 12022.53, subdivision (d) and stayed the other firearm enhancement and the great bodily injury enhancement.  The court added to the indeterminate sentence five years for the section 667, subdivision (a)(1) prior serious felony conviction enhancement.  The court struck the one-year prior prison term enhancement in the interest of justice.

The court imposed a 31-year determinate sentence for the assault, which it stayed pending successful completion of the sentence for attempted murder.  That sentence consisted of eight years for the assault (four years doubled pursuant to the Three Strikes law), three years for the great bodily injury enhancement,

6

10 years for the firearm enhancement, and 10 years for the gang enhancement.

**5.      *CDCR Letter***

On October 23, 2018, the superior court received a letter from the California Department of Corrections and Rehabilitation (CDCR) stating that there may be an error in defendant's sentence.  The letter indicated that defendant's minimum 15 year eligibility for parole was not doubled pursuant to the Three Strikes law.

**6.      *Defendant's Response to the CDCR Letter***

Through appointed counsel, defendant responded to the CDCR letter.  Defendant argued that the life sentence with a 15-year minimum eligibility was not unauthorized and should be reimposed.  Counsel did not request a new probation report.

**7.      *Defendant's Motion for Resentencing***

In April 2019, defendant filed a motion for resentencing in propria persona.  Defendant requested the trial court exercise its newly-found discretion to strike the firearm enhancements.  Defendant argued "there are several significant factors in this case that mitigate in favor of this court exercising its discretion" to dismiss the firearm enhancements.  Defendant, however, did not specifically identify those factors.

**8.      *The Trial Court Vacates the Sentence and Resentences Defendant***

The resentencing court vacated defendant's sentence.  The resentencing court stated that after reviewing defendant's motion:  "Certainly the court does have discretion to strike any

firearms enhancements. The court has discretion to strike any gang allegations, the five-year serious felony prior allegation, and the great bodily injury allegation. So the court is aware of its discretion to strike all of those . . . ."

The resentencing court found that the original sentence was unauthorized. The resentencing court reasoned that this case involved "a premeditated gang attack, certainly multiple gang members going to a location to lie in wait and wait for a known rival gang member to return. Basically, trapping that individual in a situation where he's either still in or barely out of his vehicle at the time, putting him in a much more vulnerable position, and the court does not believe striking the strike or striking any of the enhancements would be appropriate under these circumstances."

Following a hearing at which defendant was represented by counsel, the resentencing court sentenced defendant to 60 years to life for the attempted murder. The resentencing court doubled the minimum prison term from 15 years to 30 years pursuant to the Three Strikes law and otherwise ordered the same indeterminate sentence as the original sentencing court. The court struck the one-year prior prison term enhancement.

The resentencing court sentenced defendant to 36 years on the assault with a firearm but stayed the sentence pursuant to section 654. The determinate sentence consisted of four years for the assault with a firearm doubled pursuant to the Three Strikes law, three years for the great bodily injury enhancement, 10 years for the firearm enhancement, 10 years for the gang enhancement, and five years for the section 667, subdivision (a) prior serious felony conviction enhancement.

Defendant timely appealed.

8

## DISCUSSION

On appeal, defendant raises three challenges to his 60-year-to-life sentence. Defendant, who was represented by counsel in the trial court, did not raise any of these challenges in the trial court and therefore forfeited them. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*); *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) We address defendant's arguments on the merits to respond to defendant's claim of ineffective assistance of counsel. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126, abrogated on another ground as explained in *People v. Leon* (2020) 8 Cal.5th 831, 848; Cf. *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) Finding none of defendant's challenges has merit, we reject defendant's argument that his counsel in the resentencing court was ineffective by failing to raise them.

## A. The Resentencing Court Did Not Abuse Its Discretion in Not Striking the Prior Strike

Defendant argues that the resentencing court abused its discretion in not striking his prior strike offense for robbery.

A trial court has discretion to strike a prior strike offense in the interest of justice if the " ' "defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) " '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or

9

violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Carmony*, at p. 377.) The circumstances must be "extraordinary" for a " 'career criminal' " to fall outside of the Three strikes scheme. (*Id*. at p. 378.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

The facts underlying defendant's prior and current convictions confirm that he fell within the spirit of the Three Strikes law. Defendant committed the robbery with other gang members, demonstrating his commitment to the gang. Although defendant did not personally use a firearm, he was a principal in the crime in which his fellow gang member used a firearm. Defendant was an adult when he committed the robbery and his incarceration for it did not deter him from continuing his gang and criminal lifestyle. Turning to the attempted murder, defendant and another gang member laid in wait for the victim. Defendant shot at his victim numerous times, wounding him and causing him to suffer great bodily injury. Defendant's crimes were of escalating seriousness from vandalism to robbery to

attempted murder and he was on parole at the time he committed the attempted murder.

This case does not involve the extraordinary circumstances required for a trial court to strike a prior strike offense in the interest of justice. The very purpose of the Three Strikes law was to punish recidivist criminals like defendant more harshly. Section 667, subdivision (b) states: "It is the intent of the Legislature in enacting subdivisions (b) to (i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses." Defendant cites recent more lenient sentencing laws, but the existence of these laws does not demonstrate an extraordinary circumstance requiring striking a prior under the Three Strikes law. The relevant question is whether defendant falls outside the scheme of the Three Strikes law, not whether the trial court's decision to strike an offense would permit defendant to take advantage of more lenient sentencing laws.[2]

Defendant argues that the resentencing court should have obtained a supplemental probation report, but simultaneously concedes the resentencing court was not required to request a

---

[2] Defendant argues that his new sentence deprives him of the benefits of section 3051. Under section 3051, when a person aged 25 or younger is convicted of a crime or multiple crimes and sentenced to prison, if the longest punishment imposed for the crimes for which the person is convicted is 25 years to life, that person becomes "eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration." (See § 3051, subds. (a) & (b)(3).) Section 3051, however, does not apply to youthful offenders sentenced under the Three Strikes law. (§ 3051, subd. (h).)

11

new report because defendant was not eligible for probation. As defendant acknowledges, a presentence probation report was not mandatory.[3] (*People v. Franco* (2014) 232 Cal.App.4th 831, 834; Cal. Rules of Court, rule 4.411.)[4] Defendant identifies no law that would have compelled procuring a supplemental probation report.

Defendant's remaining arguments also fail. Defendant emphasizes that he was only 18 at the time he committed the robbery, claims that his mental faculties were not fully developed at that time, and points out that he had an expectation of a specific parole date. He does not demonstrate how these considerations are relevant to whether he falls within the spirit of the Three Strikes law. Defendant appears to argue that imposition of the five-year enhancement would be sufficient punishment for a recidivist offender, but cites no authority for the proposition that also imposing more prison time under the Three Strikes law would be an abuse of discretion. In short, defendant does not demonstrate that the resentencing court's decision not to strike defendant's prior was "so irrational or arbitrary that no

---

[3] Defendant forfeited this argument because he did not request an updated probation report in the resentencing court. (*People v. Franco, supra,* 232 Cal.App.4th at p. 834.)

[4] California Rules of court, rule 4.411(a) provides: "(1) A presentence investigation and report if the defendant:

(A) Is statutorily eligible for probation or a term of imprisonment in county jail under section 1170(h); or

(B) Is not eligible for probation but a report is needed to assist the court with other sentencing issues, including the determination of the proper amount of restitution fine . . . ."

12

reasonable person could agree with it."**5** (*Carmony, supra,* 33 Cal.4th at p. 377; see also *People v. Leavel* (2012) 203 Cal.App.4th 823, 837 ["The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary."].)

## B. Double Jeopardy Does Not Bar Defendant's Sentence, Which Is Harsher than the Original Sentence

Defendant's argument that imposition of a harsher sentence upon resentencing violates principles of double jeopardy lacks merit because the original sentence was unauthorized. "The Supreme Court observed that 'a sentence is generally "unauthorized" where it could not lawfully be imposed under any circumstance in the particular case,' and 'commonly occurs where the court violates mandatory provisions governing the length of confinement.' [Citation.] In such a circumstance, the sentence is

---

**5** Division Six of this court recently held that a trial court may consider a defendant's post-sentence conduct when exercising its discretion to strike a firearm enhancement. (*People v. Yanaga* (2020) 58 Cal.App.5th 619.) In *Yanaga*, the defendant presented "a 'laudatory chrono' from a catholic prison chaplain; a '[c]haracter [r]eference [l]etter' from a protestant prison chaplain; and commendations for his active participation in a '12-step self-help rehabilitation program,' an 'Anti-Recidivism Coalition Youth Offender Mentoring Program,' and a 'live-in placement' program that trains dogs to serve wounded veterans. In addition, [the defendant] submitted certificates presented to him for successfully completing three 10-week rehabilitation programs." (*Id.* at p. 623, final bracketed insertion added.) Here, in contrast, defendant presented no evidence of his post-sentencing conduct.

'subject to judicial correction whenever the error [comes] to the attention of the trial court or a reviewing court,' even if the correction increases the sentence originally imposed." (*People v. Roth* (2017) 17 Cal.App.5th 694, 702–703.)

### 1.    Indeterminate Sentence

The trial court resentenced defendant because the original sentencing court failed to apply the gang enhancement's minimum eligibility requirement properly.  More specifically, section 186.22—commonly referred to as a gang enhancement— sets forth a 15-year minimum eligibility for parole for a defendant who receives an indeterminate sentence for a crime committed for the benefit of, at the direction of or in association with a criminal street gang.  (*Jefferson*, *supra*, 21 Cal.4th at p. 90.)  The Three Strikes law requires doubling that term when a defendant has suffered a prior serious or violent felony conviction.  (*Id.* at pp. 89–90, 101.)  Thus, the original sentencing court was required to double this 15-year eligibility date for parole.

Defendant argues that his original sentence was not unauthorized because the original sentencing court could have exercised its discretion to strike the prior strike offense.  The argument is unpersuasive because the original sentencing court did not exercise its discretion to strike the prior offense.  Because the original sentencing court did not strike the prior offense, it had to, but failed to double the minimum eligibility term from 15 years to 30 years.  (*Jefferson*, *supra*, 21 Cal.4th at p. 90.)

### 2.    Determinate Sentence

The original sentence was unauthorized for the additional reason that the original sentencing court failed to impose the

five-year enhancement pursuant to section 667, subdivision (a)(1) with respect to the determinate sentence.[6]  "Prior serious felony enhancements are added once to each count on which an indeterminate sentence is imposed and once for the combined counts on which an aggregate determinate term has been imposed."  (*People v. Tua* (2018) 18 Cal.App.5th 1136, 1141; see also *People v. Misa* (2006) 140 Cal.App.4th 837, 847 [holding that a section 667, subdivision (a) enhancement applies to both an indeterminate and determinate sentence].)

In holding that the trial court did not err in adding prior prison term enhancements to both the determinate and indeterminate sentences, *People v. Minifie* (2018) 22 Cal.App.5th 1256 explained:  "[I]mposition of an enhancement for a prior conviction on both the indeterminate and determinate sentences is consistent with the separate statutory sentencing schemes for indeterminate and determinate term crimes. . . .  'Sentencing under these two sentencing schemes must be performed separately and independently of each other.  [Citation.]  Only after each is determined are they added together to form the aggregate term of imprisonment.' "  (*Id*. at pp. 1263–1264.)  The court described this approach " 'as sentencing in separate boxes,' " concluding on the facts before the court, " 'the indeterminate term crime . . . is placed in one box.  The court imposes the required [ ]life sentence and, in the same box, adds any enhancements to that sentence. . . .  [¶]  A second box is

---

[6] Although since January 1, 2019, the trial court has had discretion whether to impose or strike the section 667, subdivision (a)(1) enhancement, at the time of the original sentence, the trial court had no such discretion.  (*People v. Shaw* (2020) 56 Cal.App.5th 582, 586.)

created to include the three determinate sentence crimes. . . . [¶] After these calculations, the second box would be complete and contain the total sentence for all the determinate sentence crimes. The court would add the term of the second box to the term of the first box to arrive at the total aggregate sentence.' " (*Id*. at p. 1264.) Applying these principles here, the trial court's failure to impose the enhancement on the determinate term resulted in an unauthorized sentence. (*People v. Vizcarra* (2015) 236 Cal.App.4th 422, 432.)

This case does not involve multiple determinate sentences. Therefore, the cases cited by defendant—*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1163 and *People v. Tassell* (1984) 36 Cal.3d 77, 91, disapproved on another ground in *People v. Ewoldt* (1994) 7 Cal.4th 380, 401)—do not apply. Both *Gutierrez* and *Tassell* hold that only one section 667, subdivision (a) enhancement may be applied to an aggregate determinate term. (*Gutierrez*, *supra*, at pp. 1163–1164; *Tassell*, *supra*, at p. 91.) The holding is inapplicable here because this case does not involve an aggregate determinate term; it involves only a single determinate term.

C.   **Defendant Does Not Show that His Sentence Constitutes Cruel and Unusual Punishment Under Either the State or Federal Constitutions**

The Eighth Amendment to the United States Constitution, which prohibits the infliction of "cruel and unusual punishment," applies to the states. (*People v. Caballero* (2012) 55 Cal.4th 262, 265, fn. 1.) Article I, section 17 of the California Constitution prohibits infliction of "[c]ruel or unusual" punishment. The touchstone of both the federal and state standard is gross disproportionality. (See *Miller v. Alabama* (2012) 567 U.S. 460,

469; *Ewing v. California* (2003) 538 U.S. 11, 21 (lead opn. of O'Connor, J.) (*Ewing*); *Rummel v. Estelle* (1980) 445 U.S. 263, 271; *In re Butler* (2018) 4 Cal.5th 728, 744.) We independently review whether a punishment is cruel and/or unusual, but we consider any disputed fact in the light most favorable to the judgment. (*People v. Abundio* (2013) 221 Cal.App.4th 1211, 1217.)

### 1. Defendant's sentence was not cruel and unusual under the federal Constitution

The United States Supreme Court discussed disproportionality in the following summary of its rulings: "[T]he Court has held unconstitutional a life without parole sentence for the defendant's seventh nonviolent felony, the crime of passing a worthless check. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In other cases, however, it has been difficult for the challenger to establish a lack of proportionality. A leading case is *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in which the offender was sentenced under state law to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. The controlling opinion concluded that the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' *Id.*, at 997, 1000–1001, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment). Again closely divided, the Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's so-called three-strikes recidivist sentencing scheme. *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179,

17

155 L.Ed.2d 108 (2003); see also *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).  The Court has also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and a sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana, [citation]." (*Graham v. Florida* (2010) 560 U.S. 48, 60.)

The United States Supreme Court's analysis in *Ewing*, *supra*, 538 U.S. 11 is particularly instructive because as in this case, the question there was whether application of California's Three Strikes law resulted in cruel and unusual punishment.  In *Ewing*, the defendant was sentenced to a 25-year-to-life sentence for the theft of personal property, specifically three golf clubs, with a total value of $1,197.  (*Id*. at p. 18.)  The jury convicted Ewing of grand theft of personal property in excess of $400. (*Id*. at p. 19.)  The court found that Ewing suffered four previous serious or violent felonies.  (*Ibid*.)

The high court explained that:  "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " (*Ewing*, *supra*, 538 U.S. at p. 20.)  "When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime.  Nothing in the Eighth Amendment prohibits California from making that choice." (*Id*. at p. 25.)  The court then considered whether a sentence of 25 years to life was grossly disproportionate to stealing golf clubs worth nearly $1,200 after

18

committing at least two violent or serious felonies.  (*Id*. at p. 28.)
"Ewing's sentence is justified by the State's public-safety interest
in incapacitating and deterring recidivist felons, and amply
supported by his own long, serious criminal record."  (*Id*. at
pp. 29–30.)  Ewing's sentence "reflects a rational legislative
judgment, entitled to deference, that offenders who have
committed serious or violent felonies and who continue to commit
felonies must be incapacitated."  *(Id*. at p. 30.)  The high court
found no gross disproportionality between the crime and the
sentence.  (*Ibid*.)

  *Lockyer v. Andrade* (2003) 538 U.S. 63 further signaled the
high court's deference to the Legislative authority to impose
harsh sentences on recidivist offenders.  *Andrade* also involved
California's Three Strikes law and the defendant's third strike
involved stealing videotapes worth about $150.  *Andrade* argued
that his sentence of two consecutive terms of 25 years to life in
prison was grossly disproportionate to stealing approximately
$150 in videotapes.  (*Id*. at p. 70.)  The California Court of Appeal
upheld the sentence; the Ninth Circuit reversed; and the high
court reversed the Ninth Circuit finding "it was not an
unreasonable application of our clearly established law for the
California Court of Appeal to affirm Andrade's sentence of two
consecutive terms of 25 years to life in prison."  (*Id*. at p. 77.)

  Turning to this case, we observe that defendant's crimes—
attempted murder and assault with a firearm—are far more
serious than stealing three golf clubs or $150 in videotapes.
*Ewing* and *Andrade* foreclose defendant's contention of cruel and
unusual punishment because he cannot reasonably argue that his
60-year-to-life sentence is grossly disproportionate to attempted
murder with firearm and gang enhancements when the high

19

court upheld a 50-year-to-life sentence for stealing $150 in videotapes and a 25-year-to-life sentence for stealing three golf clubs. Unlike the theft-related crimes in *Ewing* and *Andrade*, defendant's current crime involved great violence and only through serendipity, did not kill his victim.

In challenging his sentence under the federal Constitution, defendant ignores these authorities. Defendant does not cite to *Andrade* at all. With respect to *Ewing*, defendant notes the obvious[7] but not the negative implications of the Supreme Court's ruling as applied to the case before us. Under these controlling authorities, we conclude defendant's sentence was not cruel and unusual in violation of the Eighth Amendment.

### 2. Defendant's sentence was not cruel or unusual punishment under the California Constitution

Article I, section 17 of the California Constitution prohibits a punishment that is "grossly disproportionate to the offense for which it is imposed." (*People v. Dillon* (1983) 34 Cal.3d 441, 478 (*Dillon*), superseded by statute on another ground as stated in *People v. Chun* (2009) 45 Cal.4th 1172, 1186.) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving

---

[7] Defendant argues: "In 2003, the United States Supreme Court, in *Ewing v. California* [citation], in which the court analyzed a sentence imposed under California's Three Strikes law, stated that the proportionality principles distilled in Justice Kennedy's concurrence [in *Harmelin*] guided its application of the Eighth Amendment in the new context that it was called upon to consider [in the *Ewing* case]."

an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible.  The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*In re Lynch* (1972) 8 Cal.3d 420, 423–424 (*Lynch*).)

Lynch set forth three criteria to determine whether a sentence is cruel or unusual:  (1) considering the nature of the offense and the offender; (2) comparing the challenged punishment to those imposed by the same jurisdiction for more serious crimes; and (3) comparing the challenged punishment to those imposed by other jurisdictions for the same crime. (*Lynch*, *supra*, 8 Cal.3d at pp. 425–427.)  Successful challenges based on *Lynch* are "extremely rare." (*People v. Perez* (2013) 214 Cal.App.4th 49, 60 (*Perez*).)

Two cases illustrate application of these principles to sentences imposed under the Three Strikes law.  In *People v. Haller* (2009) 174 Cal.App.4th 1080 (*Haller*), the trial court found that defendant's 78-year-to-life sentence for multiple counts of criminal threats, stalking, and assault with a deadly weapon was not cruel or unusual punishment.  Defendant had two prior serious felonies for criminal threats and for battery with serious bodily injury. (*Id*. at p. 1084.)  Defendant's convictions arose out of his history of domestic violence in which he physically abused and stalked his ex-wife and threatened her new husband. (*Id*. at pp. 1084–1085.)

The appellate court rejected defendant's argument that his sentence was cruel or unusual punishment. "[T]he current offenses caused or threatened harm and violence to the victims. Defendant terrorized them with relentless phone calls threatening vile acts of violence. He disrupted their lives to such an extent that they were afraid to sleep. He displayed willingness to follow through with his threats by going to the victims' home with a knife." (*Haller, supra*, 174 Cal.App.4th at p. 1088.) "In considering the harshness of the penalty, we take into consideration that defendant is a repeat offender whom the Legislature may punish more severely than it punishes a first-time offender. [Citation.] Yet we also have in mind that, because the penalty is imposed for the current offenses, the focus must be on the seriousness of these offenses." (*Id.* at pp. 1089, 1092.) The court found defendant's sentence was not "out of all proportion to the punishment in California for commission of multiple, serious stalking/assault/criminal threat offenses by a third strike offender." (*Id.* at p. 1093.) Applying these principles, the court found that the 78-year-to-life sentence was not cruel and/or unusual. (*Id.* at p. 1094.)

In contrast, in *People v. Avila*, Division Three of this court found the defendant's sentence to be cruel or unusual under the state Constitution. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1138–1139.) The jury convicted Avila of attempted second degree robbery and attempted extortion. (*Id.* at p. 1139.) Avila demanded money from two vendors selling oranges, telling one vendor he had to pay rent. (*Ibid.*) Avila had three prior strike convictions within the meaning of the Three Strikes law. (*Id.* at p. 1140.) The appellate court explained that neither the attempted robbery nor the attempted extortion was a violent

22

crime. (*Id*. at p. 1146.) The defendant did not use violence against either of his victims and did not verbally or physical threaten them. (*Ibid*.) Avila caused about $20 worth of property damage when the victims did not pay him money. (*Ibid*.) "Avila's current offenses alone cannot justify the sentence imposed. It bears repeating: he squashed oranges and was sentenced to life." (*Id*. at p. 1147.) The court further explained that Avila's prior strike convictions occurred almost 30 years before his current conviction. (*Id*. at p. 1148.) The court also noted that Avila was addicted to drugs and that his addiction was an appropriate consideration in determining whether the conviction was cruel or unusual. (*Ibid*.) The court also considered the trend toward more lenient sentencing, including sentencing under the Three Strikes law by requiring the third strike to be serious or violent. (*Id*. at pp. 1150–1151.) Taking all of these circumstances into consideration, the court held that Avila's conviction constituted cruel or unusual punishment. (*Id*. at pp. 1151–1152.)

### a. Nature of Offense

A review of the nature of the offense involves " 'such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts,' . . . ." (*In re Nuñez* (2009) 173 Cal.App.4th 709, 731.) For example, if the facts of the offense do not include violence or a victim, a lengthy sentence is more likely to be found to be disproportionate. (See *Lynch*, *supra*, 8 Cal.3d at pp. 425–426.)

Looking to defendant's offense before us, defendant demonstrates no disproportionality. Defendant's offense was exceedingly violent. Defendant lay in wait for a rival gang member and shot at the victim multiple times at close range, hitting him twice. Defendant also jeopardized the safety of the

victim's brother as he continued shooting when he saw the victim's brother. Defendant premeditated and intended to kill Santos and brought a firearm to the scene of the shooting. The fact that Santos's life was spared was not due to any conduct or mercy on defendant's part. The violence involved in this case was far greater than in *Avila*, where the defendant squashed oranges. It was also greater than that committed by the defendant in *Haller* who threatened violent conduct but did not engage in it.

### b.     *Nature of Offender*

To consider the nature of the offender, we inquire "whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Dillon*, *supra*, 34 Cal.3d at p. 479.) We must also take into account defendant's recidivism. (*People v. Gray* (1998) 66 Cal.App.4th 973, 992.)

Although defendant was young at the time he committed the attempted murder, he was involved in a gang and had committed attempted murder for the benefit of his criminal street gang. Defendant did not reform his prior ways after his incarceration for robbery, but instead committed crimes while on parole including being a felon in possession of a firearm and attempted murder. Further defendant premeditated before committing the attempted murder and laid in wait for his victim. Defendant has demonstrated no remorse for his crime and no renunciation of his criminal lifestyle. A review of the nature of the offender does not support the conclusion that defendant's sentence constituted cruel or unusual punishment.

24

### 3. Comparison to more serious crimes in California

Defendant next turns to the second *Lynch* factor, which requires us to compare the punishment imposed in the present case with the punishment prescribed for more serious offenses in California. Defendant does not compare his crime to any crime more serious than the one he committed.

Instead, defendant argues that his sentence is significantly greater than a first-time offender, who committed a premeditated murder without using a firearm. Defendant's argument is flawed in several respects. First, it can be argued that defendant's culpability is similar to that of a defendant who commits first degree murder because it was only happenstance that prevented Santos's death. With the intent to kill Santos, defendant shot at him multiple times and caused him great bodily injury. Defendant does not show that his conduct is less blameworthy than a premeditating murderer who was a better shot. Additionally, the maximum punishment for the first degree murderer who lies in wait for his victim, such as defendant acknowledges he did, includes the death penalty, which is more severe than defendant's sentence. (§ 190.2, subd. (a)(15).)

Second, defendant is not similarly situated to the first-time killer because defendant is being punished as a recidivist offender. (*Haller, supra,* 174 Cal.App.4th at p. 1093; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 571.)

Third, defendant is not similarly situated to the defendant who committed a murder without using a firearm because defendant used a firearm. Section 12022.53 authorizes " ' "substantially longer prison sentences" ' " for " ' "felons who use firearms in the commission of their crimes." ' " (*People v. Palacios*

25

(2007) 41 Cal.4th 720, 725.) In addition, to using a firearm, defendant also committed the offense for the benefit of his criminal street gang. In sum, defendant fails to demonstrate that his resentence punished him more severely than a more serious crime; he simply offers an inapt analogy.

### 4. Comparison to punishment in other jurisdictions

The third *Lynch* factor requires us to compare punishment imposed in this case with the punishment prescribed for the same offense in other jurisdictions. Defendant makes no argument and presents no authority that his sentence is greater than the punishment prescribed for the same offense in other jurisdictions.

### 5. Defendant's remaining arguments

Citing Justice Mosk's concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585, 600, defendant argues that his sentence is cruel or unusual because it results in a sentence not far from his life expectancy. In *Deloza*, Justice Mosk concluded that a sentence of 111 years, which is longer than most human lifetimes, violates the federal and state Constitutions. This case does not similarly involve a sentence that is impossible to serve. Justice Mosk's opinion, moreover, is not binding on this court. (See *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383 [disagreeing with *Deloza* and explaining that a concurring opinion has no precedential value].) California courts have upheld sentences that exceed the defendant's life expectancy. (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230 and cases cited therein.) In short, defendant does not show that this is an " 'exquisitely rare' " case in which a sentence is cruel or unusual. (*Perez*, *supra*, 214 Cal.App.4th at p. 60.)

Defendant's additional arguments[8] are unsupported by legal authority and irrelevant to the factors described in *Lynch* for determining whether a sentence is cruel or unusual punishment under the California Constitution.  Defendant has thus forfeited his arguments by failing to cite to legal authority. (*People v. Hardy* (1992) 2 Cal.4th 86, 150.)

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

[8] Defendant argues that his sentence is cruel or unusual because it renders him ineligible for relief under sections 3051 and 3055.  He also argues that his sentence is cruel or unusual because of the delay in imposing it and because the resentencing court did not strike the prior robbery offense.