Filed 4/26/22  P. v. McCarter CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRYAN LEE MCCARTER,<br><br>        Defendant and Appellant. | A164258<br><br>(Fresno County<br>Super. Ct. No. F19900477) |

A jury found defendant Bryan Lee McCarter guilty of attempted carjacking (Pen. Code, §§ 664, 215, subd. (a)),[1] and the trial court sentenced him to 30 years to life in prison.[2]  On appeal, defendant argues that the trial court (1) erroneously admitted a witness's opinion testimony, (2) abused its discretion by refusing to strike one of defendant's prior felony strike convictions, and (3) violated the federal and state constitutional prohibitions against cruel and unusual punishment.  We affirm.

---

[1]    Further statutory references are to the Penal Code unless indicated otherwise.

[2]    This matter was transferred over by California Supreme Court Order on January 3, 2022, from the Fifth Appellate District to the First Appellate District.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, K.C.[3] drove to a Union 76 gas station to fuel her car. As K.C. was looking at the gas pump's monitor, a man approached her, reached into her left jacket pocket, and grabbed her car keys. K.C. pulled on the lanyard attached to her keys as the man entered her car and tried to put the key into the ignition. K.C. struggled to pull the man out of her car while yelling "No." When the man resisted, K.C. fell to the ground and hurt her leg.

Robert R. heard K.C. yelling as she struggled with the man. The man ran away as Robert R. approached them, and K.C. said the man had her keys. Robert R. chased the man toward a nearby Shell gas station. The man told Robert R. that he no longer had the keys, and Robert R. could see that the man's pockets were empty.[4] The man then fled the scene by jumping onto a moving semi-truck.

Fresno Police Detective Parvinder Dhillon reviewed surveillance footage from the Shell station and released a "be on the lookout" flyer. Sergeant Mandeep Khela told Dhillon he had made contact with defendant the previous day. Dhillon reviewed Khela's body camera footage from that incident and saw that defendant's hairstyle matched the hairstyle of the suspect in the Shell station footage.

Detective Dhillon created a six-person photographic line-up that included a photograph of defendant taken in 2015. K.C. chose two photographs from the line-up, one of which was defendant's 2015 photograph

---

[3]    We will refer to the victims and witnesses by the first name and last initial, or initials only to protect their privacy. (Cal. Rules of Court, rule 8.90.)

[4]    Although K.C. saw the broken key lanyard next to her car and thought the man had taken her keys, she later found the keys in her pocket or on her car seat.

and said, " 'I think it's him.' " She chose the other photograph "[j]ust [because] the hair" was similar to her attacker's shoulder-length hair. Dhillon later presented the same line-up to Robert R., who also chose two photographs, one of which was defendant's.

Defendant was arrested 12 days after the incident. He was then interviewed by Detective Dhillon and another detective, during which he denied any involvement in the attempted carjacking.

Defendant was charged by information with one count of attempted carjacking (§§ 664, 215, subd. (a)). The information further alleged that defendant had previously suffered two felony strike convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) in 1997 for carjacking (§ 215, subd. (a)), both of which qualified as serious felony convictions (§ 667, subd. (a)(1)). It also alleged that defendant had suffered prior felony convictions for: vehicle theft in 2015 (Veh. Code, § 10851, subd. (a)); receiving stolen property in 2015 (§ 496d, subd. (a)); and grand theft in 1996 and 1992 (§ 487, subd. (c)), all of which resulted in imprisonment (§ 667.5, subd. (b)). At the time of the offense in question, defendant was sixty years old.

At trial, K.C. identified defendant as her attacker, though at first she was unable to do so. She explained she did not initially recognize him because he looked different, i.e., his facial hair was longer, his head hair length was shorter, and his clothing differed from when he attacked her. Sergeant Khela also identified defendant at trial, but Robert R. was unable to do so.

During the prosecutor's examination, Detective Dhillon testified that she reviewed the Shell station surveillance video, talked with Sergeant Khela and reviewed Khela's body camera footage, and conducted the photographic line-up with K.C. and Robert R. and interviewed them. Dhillon also testified

3

that when she interviewed defendant, she noticed that defendant's shoes matched the shoes of the suspect in the surveillance video. Following this testimony, the prosecutor and Dhillon engaged in the following colloquy:

"Q: Now, after you interviewed the Defendant, did you form an opinion as to who the suspect that attacked and tried to steal [K.C.'s] vehicle?

"A: Yes.

"Q: And what was your opinion?

"A: That it was Mr. McCarter.

"Q: And what's your opinion based on?

"A: Based on the totality of my investigation, the surveillance footage, the, um, contact with Sergeant Khela the day before the incident and the other information I received during the investigation."

The trial court allowed the foregoing testimony to remain in evidence after having denied defendant's motion in limine regarding the detective's anticipated testimony and overruling defendant's objection once the detective so testified.

The jury found defendant guilty of attempted carjacking. Defendant then admitted his two prior strike convictions and one of the two prior serious felony convictions, and the remaining prior conviction allegations were dismissed pursuant to section 1385. Thereafter the trial court refused defendant's motion to strike one of his prior strike convictions and ultimately imposed the indeterminate term of 25 years to life for the attempted carjacking (§§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii)), and an additional five-year enhancement (§ 667, subd. (a)(1)), resulting in an aggregate sentence of 30 years to life.

Defendant appealed.

4

## I.      Detective Dhillon's Opinion Testimony

As indicated, Detective Dhillon testified it was her opinion that defendant was K.C.'s attacker.  Defendant challenges the admission of this opinion testimony on two grounds:  (1) Dhillon's identification lacked foundation because she had no personal knowledge of his appearance prior to the offense at issue, and (2) Dhillon gave an improper opinion on defendant's guilt.

### *A. Personal Knowledge*

Opinion testimony from a lay witness is admissible provided that the testimony is based on the witness's personal knowledge and is helpful to a clear understanding of his or her testimony.  (Evid. Code, § 800.)  A person's identity is within the permissible scope of a lay witness's opinion testimony (*People v. Leon* (2015) 61 Cal.4th 569, 601 (*Leon*)), and courts have long admitted "testimony identifying defendants in surveillance footage or photographs" (*id.* at pp. 600–601).  We review a claim that a witness's opinion was erroneously admitted for abuse of discretion.  (*People v. Smith* (2003) 30 Cal.4th 581, 627.)

Several decisions are instructive on this issue.  In *People v. Perry* (1976) 60 Cal.App.3d 608 (*Perry*), the appellate court upheld the admission of identification testimony from various nonpercipient witnesses; one such witness was a police officer who identified the defendant based on his prior contacts with the defendant, knowledge of the defendant's physical characteristics on the day of the offense, and surveillance footage.  (*Id.* at p. 613.)  *Perry* also noted the officer's testimony was helpful because the defendant had changed his appearance by shaving his mustache before trial.  (*Ibid.*)  Similarly, in *People v. Mixon* (1982) 129 Cal.App.3d 118 (*Mixon*), the

court held that an officer's identification of the defendant as the person seen in surveillance photographs was admissible lay opinion because the officer had "previously acquired familiarity with [the defendant's] features" based on prior contacts with the defendant. (*Id.* at pp. 131–132.) In *Leon, supra,* 61 Cal.4th 569, the California Supreme Court extended *Perry* and *Mixon* to permit identification testimony based on a witness's familiarity with the defendant's appearance "around the time of the crimes." (*Leon,* at p. 601.) Thus, *Leon* upheld the admission of an officer's identification of the defendant in surveillance videos based on the officer's *post*-arrest contacts with the defendant. (*Ibid.*) *Leon* additionally observed that the jurors were shown the surveillance video and "could make up their own minds as to whether the person shown was defendant." (*Ibid.*)

Drawing from these authorities, we conclude there would have been no error or abuse of discretion in allowing Detective Dhillon to testify that defendant was the person depicted in the surveillance video.[5] The trial court could reasonably conclude that Dhillon had sufficient personal knowledge based on the totality of her investigation of the incident—which included her personal review of Shell station video, her review of Sergeant Khela's body camera footage of defendant taken a day before the incident and her conversation with Khela, her interviews of K.C. and Robert R. and conducting their photographic line-up identifications, and her interview of defendant less than two weeks after the incident. Moreover, as in *Perry*, Dhillon's testimony was helpful because defendant had changed his head and facial hair before trial. (*Perry, supra,* 60 Cal.App.3d at p. 613.) Finally, as in *Leon*, the jurors

---

[5] To the extent the question Detective Dhillon answered was broader—not whether defendant was the person depicted in the surveillance video but whether he was the person who attacked and tried to steal a car from K.C.—that issue is addressed in Part I.B., *post.*

were shown the Shell station video footage and could determine for themselves whether defendant was the man seen running in it. (*Leon*, *supra*, 61 Cal.4th at p. 601.)

Defendant argues that Detective Dhillon's viewing of his appearance on video footage, without any prior personal contact with him before the incident, was insufficient to support the detective's personal knowledge. We disagree. The personal knowledge requirement is satisfied so long as the witness is "familiar with defendant's appearance around the time of the crimes." (*Leon*, *supra*, 61 Cal.4th at p. 601.) Moreover, "[q]uestions about the extent of [Dhillon's] familiarity with defendant's appearance went to the weight, not the admissibility, of [her] testimony." (*Ibid*.) Since the body camera footage was taken a day before the incident, and Dhillon interviewed defendant shortly after the incident, we cannot say the trial court abused its discretion in determining that Dhillon had gained sufficient familiarity with defendant's appearance around the time of the incident to then identify him in the surveillance footage.

## B. Opinion Regarding Defendant's Guilt

As recounted above, when asked by the prosecution if she had formed an opinion on the identity of the suspect "that attacked and tried to steal [K.C.'s] vehicle," Detective Dhillon replied it was defendant. Defendant contends this portion of Dhillon's testimony could, on its face, be construed as an improper opinion on guilt.[6]

A witness may not offer opinion testimony on the "guilt or innocence" of the defendant. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77;

---

[6] The People argue that defendant forfeited this contention by failing to object on this specific ground at trial. We will exercise our discretion to review this evidentiary issue despite the forfeiture given defendant's related claim for ineffective assistance of counsel which he raised in his reply brief.

*People v. Vang* (2011) 52 Cal.4th 1038, 1048 (*Vang*); see Evid. Code, § 803.) Such testimony is inadmissible because it invades the province of the jury, which is the sole decider of the defendant's guilt or innocence. (*People v. Prince* (2007) 40 Cal.4th 1179, 1227 (*Prince*).)

In *Prince*, an FBI agent testified to his belief that "all the crimes were committed by the same person." (*Prince, supra*, 40 Cal.4th at p. 1227.) In holding this did not invade the province of the jury, *Prince* observed that the agent did not explicitly testify the defendants were guilty, and that the lower court properly instructed the jurors that they were the exclusive judges of credibility and were not bound by the agent's testimony. (*Ibid.*) In *Vang*, a detective testified, based on hypothetical questions tracking the evidence, that an assault was gang related. (*Vang, supra*, 52 Cal.4th at pp. 1049–1050.) *Vang* held this did not invade the province of the jury because "expert testimony is permitted even if it embraces the ultimate issue to be decided," and the jury there still played a critical role in deciding whether to credit the expert's opinion and in determining whether the facts stated in the hypothetical questions were the actual facts. (*Ibid.*)

Here, the jurors were properly instructed that they were the "exclusive judges of credibility" (*Prince, supra*, 40 Cal.4th at p. 1227), and there is no suggestion Detective Dhillon testified that defendant's conduct satisfied all the elements of attempted carjacking so as to render him guilty of the offense. Nevertheless, the combination of the prosecutor's particular question and Dhillon's response appears qualitatively different from the testimony found appropriate in *Prince* and *Vang*, and it could reasonably have been construed as an opinion of defendant's guilt. As discussed below, however, we are not persuaded that the testimony was prejudicial to defendant.

8

### C. Harmless Error

Even assuming that Detective Dhillon's opinion testimony was erroneously admitted, and that defense counsel performed deficiently in failing to make an appropriate specific objection (see *ante*, fn. 6), it is not reasonably probable that defendant would have obtained a more favorable result had such errors not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Strickland v. Washington* (1984) 466 U.S. 668, 686 [ineffective assistance claim requires showing of a reasonable probability of a better outcome but for counsel's deficient performance].)

Detective Dhillon was not the only witness to identify defendant, and the evidence of defendant's identity as the culprit was otherwise strong. Three other witnesses—K.C., Robert R., and Sergeant Khela—identified defendant as K.C.'s attacker. Both K.C. and Robert R., who each saw defendant in person and close up, chose defendant's picture from a photographic line-up. Notably, defendant was the only person K.C. and Robert R. both chose out of the line-up; their alternate choices were different. K.C. saw the line-up eight days after the crime while Robert R. was shown the line-up about four months after the crime. Moreover, defendant was positively identified at trial by K.C. and by Sergeant Khela, who had provided the body camera footage of her contact with defendant the day before the attempted carjacking and whose testimony was not challenged at trial (or on appeal). The jury also saw the Shell station video footage of defendant running from Robert R. and heard Dhillon's testimony that the shoes worn by the man in the video matched the shoes defendant was wearing at the police interview. In light of all the evidence pointing to defendant's involvement in the offense, it is not reasonably probable that defendant would have obtained a more favorable result in the absence of

9

Dhillon's testimony identifying defendant as the man in the video who attacked K.C.

Defendant attempts to discount the strength of the prosecution's case by arguing that K.C. and Robert R. did not "positively" identify him because both also picked one other photograph from the line-up. But K.C. was on record as saying, "I think that's him," when she selected defendant's 2015 photograph. And as K.C. explained during her testimony, she had chosen the other photograph only because the longer hair in that photograph was similar to her attacker's hair on the day of the incident. Likewise, although Robert R. also selected the photograph of another individual in addition to defendant's, he ultimately leaned more heavily towards the photograph of defendant.

On this record, we conclude any assumed error in admitting Detective Dhillon's opinion testimony was harmless. And given the harmlessness of the testimony, any perceived deficiency on the matter by defendant's trial counsel did not amount to ineffective assistance.

## II.    Prior Felony Strike Convictions

Defendant next argues that the trial court improperly refused to strike one of his two prior felony strike convictions.

A court has discretion to strike a prior serious felony conviction allegation "in furtherance of justice." (§ 1385, subd. (a); see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) We review the trial court's failure to strike a prior conviction allegation for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) Two rules govern our analysis: (1) the party challenging the sentence has the burden to clearly show that the sentencing decision was "irrational or arbitrary" and (2) the trial court's decision will not be reversed " 'merely

10

because reasonable people might disagree.' " (*Id.* at pp. 376–377.) Absent a showing that the sentencing decision was irrational or arbitrary, the reviewing court presumes that the trial court acted within its discretion. (*Ibid.*) In making its determination, a trial court may not "ignor[e] 'defendant's background', 'the nature of his present offenses', and other 'individualized considerations.' " (*Romero*, at p. 531.)

Here, the trial court did not disregard defendant's individual circumstances or the details of his particular offense; rather, it explicitly considered defendant's difficult childhood, his current age, his high Adverse Childhood Experience test score, his history of substance addiction, and the lack of physical injuries to K.C. However, the court found that these considerations were outweighed by other factors such as defendant's criminal history including his seven prior felony convictions dating back to 1991, the fact that his criminal activity has not subsided with age, and his propensity towards violence when relapsing on substances. The court's decision was not irrational or arbitrary, and the mere fact that defendant disagrees with it is insufficient to show that discretion was abused. (*Carmony, supra,* 33 Cal.4th at pp. 376–377.)

## III. Lengthiness of Third Strike Sentence

Defendant contends his sentence of 30 years to life violates the prohibition against cruel or unusual punishment under the federal and state Constitutions.[7]

---

[7]     As the People point out, defendant forfeited these constitutional claims by not objecting in the trial court. (*People v. Burgener* (2003) 29 Cal.4th 833, 886; *People v. Norman* (2003) 109 Cal.App.4th 221, 229.) Nevertheless, we " 'shall reach the merits under the relevant constitutional standards, in the interest of judicial economy to prevent the inevitable ineffectiveness-of-counsel claim.' " (*People v. Russell* (2010) 187 Cal.App.4th 981, 993.)

### A. Cruel and Unusual Punishment—Federal Challenge

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment and applies to the states through the Fourteenth Amendment. (*Robinson v. California* (1962) 370 U.S. 660, 666–667.) The United States Supreme Court has seen fit to adopt "a narrow proportionality principle" for assessing Eighth Amendment challenges to noncapital sentences. (*Ewing v. California* (2003) 538 U.S. 11, 20 (*Ewing*).) This principle prohibits only "extreme sentences that are 'grossly disproportionate' to the crime" (*In re Coley* (2012) 55 Cal.4th 524, 542) and calls for courts to consider the current offense and the defendant's criminal history (*Ewing*, at p. 29). Gross disproportionality is found only in "the 'exceedingly rare' and 'extreme' case[s]." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 64 (*Andrade*).)

A comparison of the instant case to *Ewing* and *Andrade* shows that defendant's sentence is not one of the rare or extreme sentences that the Eighth Amendment prohibits. In *Ewing*, the defendant received a three strikes law sentence of 25 years to life on a grand theft conviction based on two prior serious or violent felony convictions. (*Ewing, supra*, 538 U.S. at p. 28.) The United States Supreme Court held that the sentence was not cruel and unusual in light of the defendant's most recent felony conviction, his past history, and the state's interest in punishing recidivists. (*Id.* at pp. 29–30.) Though *Ewing* acknowledged the defendant's sentence was lengthy, it deferred to California's "public-safety interest in incapacitating and deterring recidivist felons." (*Id.* at p. 29.) In *Andrade*, the defendant was previously convicted of three counts of residential burglary, and the conviction that triggered three strikes applicability was petty theft. (*Andrade, supra*, 538 U.S. at pp. 66, 68.) The Supreme Court held that two

consecutive terms of 25 years to life was not one of the "extraordinary case[s]" for which the "gross proportionality principle" reserves a constitutional violation. (*Id.* at p. 77.)

Here, defendant's sentence—which is admittedly lengthy but nonetheless comparable to the sentence in *Ewing* and almost half the sentence in *Andrade*—was not cruel and unusual in light of the aggressive nature of his current felony offense of attempted carjacking (which is classified as a "serious" felony (§ 1192.7, subds. (c)(27), (39)), his substantial criminal record which included multiple prior felony convictions, including two carjacking convictions in 1997 and two more recent felony convictions in 2015, and his seeming inability to correct his criminal recidivism.[8]

Accordingly, defendant's sentence falls short of meeting the threshold for cruel and unusual punishment under the Eighth Amendment.

### B. Cruel or Unusual Punishment—State Challenge

We further conclude that defendant's sentence is not cruel or unusual under the California Constitution.

To prevail on a cruel or unusual punishment challenge to a sentence under the California Constitution (Cal. Const., art I, § 17), a defendant must overcome a considerable burden. (*People v. Wingo* (1975) 14 Cal.3d 169, 174; *People v. Brewer* (2021) 65 Cal.App.5th 199, 213; *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630.) That is because the matter of defining crimes and determining punishment is "uniquely in the domain of the Legislature" and "the validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*Wingo*,

---

[8]　Defendant compares his sentence to life without the possibility of parole (LWOP), which can only be imposed if the jury unanimously finds one or more of 22 special circumstances to be true. (§ 190.2, subd. (a).) However, defendant was not given a LWOP sentence.

at p. 174.) As relevant here, an individual sentence does not violate the state constitutional prohibition against cruel or unusual punishment unless it is so disproportionate to the crime "that it shocks the conscience and offends fundamental notions of human dignity." (*People v. Dillon* (1983) 34 Cal.3d 441, 478; *In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*).)

Among the so-called "techniques" developed by the courts to make this determination is an examination of "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Lynch, supra*, 8 Cal.3d at pp. 425–427.)[9] Courts consider the offense in the abstract, as well as the specific facts of the crime in question, including the defendant's motive, the scope of the defendant's involvement in the crime, the manner in which the crime was committed, and the consequences of the defendant's acts. (*People v. Baker* (2018) 20 Cal.App.5th 711, 724.) In addition, courts examine the defendant's personal characteristics, including age, prior criminality, and mental capabilities to determine whether the punishment is grossly disproportionate to the defendant's individual culpability. (*Ibid.*)

---

[9] Appellate courts have held that the second of three *Lynch* techniques— comparing the penalty with penalties of more serious crimes in California—is " 'inapposite' " with a three strikes law sentence because comparing a recidivist's punishment with offenders who are not repeat offenders is "illogical." (*People v. Gray* (1998) 66 Cal.App.4th 973, 993; see *People v. Avila* (2020) 57 Cal.App.5th 1134, fn. 16 (*Avila*) [noting courts have found second *Lynch* technique inapplicable to three strikes law cases because defendant is being punished for current offense and recidivism].) The third *Lynch* technique—comparing the penalty with penalties of the same offense in other states—does not assist defendant here because some other states impose life sentences or life imprisonment with the possibility of parole for recidivists. (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338.)

In *Avila*, *supra*, 57 Cal.App.5th 1134, a defendant in his mid-40's destroyed bags of oranges being sold at a freeway off-ramp when two sellers refused the defendant's demand for money. (*Avila*, at p. 1139.) The defendant was found guilty of attempted robbery and attempted extortion and was sentenced to 25 years to life, plus 14 years. (*Ibid.*) In concluding this constituted disproportionate punishment under the first *Lynch* technique (*id.* at p. 1149), *Avila* determined, among other things, that the current offenses were nonviolent and caused no physical injuries to the victims; that the current offenses were unsophisticated and resulted in only $20 worth of damaged citrus; and that the defendant's prior strikes were remote in time and committed while he was struggling with drug addiction and under the age of 21 (*id.* at pp. 1146–1148). Because the defendant's lengthy sentence was "primarily attributable to his recidivist status" (*id.* at p. 1147) and his current offenses were "relatively minor" in nature (*id.* at p. 1148), the court ultimately determined that the defendant's sentence lacked proportionality to his crimes. (*Id.* at p. 1149.)

Here, unlike in *Avila*, defendant used force and physical aggression against a victim in the commission of an offense. Defendant forcibly pulled the keys from K.C. and struggled with her as he attempted the carjacking. Though K.C. was not physically injured, defendant's current offense qualified as a serious felony (§ 1192.7 subd. (c)(27), (39)), and his criminal history included multiple prior felony convictions. Because the record demonstrates that defendant is a recidivist who continues to pose a danger to society, we are unable to conclude that the sentence of 30 years to life is cruel or unusual under *Lynch*. (See *People v. Cuevas* (2001) 89 Cal.App.4th 689, 704–705 (*Cuevas*) [sentence of 85 years to life was not cruel or unusual where the current offenses consisted of three bank robberies that did not involve a

weapon or any physical injury and where defendant had an extensive criminal background that included crimes committed as a young adult and while in prison or on parole].)

Defendant's evidence of his difficult upbringing and long history of drug addiction does not compel a contrary conclusion. As the trial court pointed out, despite being 60 years old, defendant has not slowed down and appears unwilling to change his ways. His tendency to resort to theft and violent or assaultive conduct when relapsing on his drug addiction demonstrates that he continues to be a danger to society. Defendant is still "responsible under the law for his behavior, which he has not seen fit to amend." (*Cuevas*, *supra*, 89 Cal.App.4th at p. 704.)

In light of the nature of defendant's current offense, as well as defendant's long term and felonious criminal history, we conclude the sentence was not impermissibly disproportionate.

### DISPOSITION

The judgment is affirmed.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


A164258